IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY TROY WRIGHT,<br><br>                     Defendant. | CRIMINAL ACTION<br>NO. 19-230 |

**OPINION**

**Slomsky, J.**                                                                                             **October 4, 2021**

**I.     INTRODUCTION**

Before the Court is Defendant Anthony Troy Wright's Motion to Suppress Physical Evidence (Doc. No. 40).  In the Motion, Anthony Troy Wright ("Defendant") asserts a Fourth Amendment challenge to the search warrant affidavit issued for his home at 6321 Girard Avenue, Philadelphia, Pennsylvania.  Defendant asks the Court to suppress all physical evidence confiscated at his residence for lack of probable cause.  Specifically, Defendant states that the search warrant affidavit (Doc. No. 40-1) did not sufficiently establish a connection between his home and the alleged crimes.  Defendant seeks to suppress a pair of black pants, an Apple iPhone, a pay stub with "Anthony Wright" printed on the front, and envelopes addressed to "Anthony Wright."

The Government filed a Response in Opposition to Defendant's Motion to Suppress Physical Evidence (Doc. No. 46), and the Court held a hearing on all pre-trial motions, including Defendant's Motion to Suppress, on September 9, 2021.  For reasons that follow, the search of Defendant's residence and seizure of physical evidence were lawful under the Fourth Amendment.  Therefore, Defendant's Motion to Suppress (Doc. No. 40) will be denied.

## II. FINDINGS OF FACT

Defendant Anthony Troy Wright is charged by a grand jury with two counts of robbery in violation of 18 U.S.C. § 1951(a), and two counts of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1). (See Doc. No. 8 at 1–5.) The charges arise from two separate gunpoint robberies allegedly committed by Defendant: the first on March 28, 2018 at a Sunoco A-Plus Market, and the second on May 18, 2018 at a Walgreens Pharmacy. (See id. at 1–2, 5.)

The Philadelphia Police Department identified Defendant as the lead suspect in both robberies. (See Doc. No 40-1 at 2–4.) Police based this identification upon fingerprint evidence matched to Defendant, still images, surveillance footage showing the second robbery, and a getaway car that matched a vehicle recently in Defendant's possession. (See id. at 2–4.) Further, police concluded that the two robberies were committed by the same person due to a similar description and modus operandi. (See id. at 3.) Namely, both robberies were carried out by an individual in a black zip-up hooded sweatshirt, black pants, dark boots, and a skull type mask. (See id.) Further, both robberies unfolded in the following order: the perpetrator entered the store, brandished a black handgun with a silver breach, stole cash and cigarettes, then left. (See id.)

At the heart of Defendant's Motion to Suppress is the search warrant affidavit for Defendant's home, which he argues is defective. (See Doc. No. 40 ¶¶ 17–22.) On June 13, 2018, Philadelphia Police Detective Jarell Babb obtained a search warrant from a state court judge for Defendant's home at 6321 Girard Avenue. (See id. at 5.) The search warrant included an affidavit of probable cause from Officer Babb describing the robberies, reasons Defendant was identified as the perpetrator of both crimes, and an explanation of why a search of Defendant's home was in order. (See id. at 2–4.) Regarding the first robbery, the search warrant affidavit states:

2

> On March 28, 2018 at 1939 hours Detective Karr and George #94, [the Upper Darby Police Department] responded to the Sunoco A-Plus located at 8203 West Chester Pike, Upper Darby, Delaware County, Pennsylvania for an armed robbery had just occurred. As part of this investigation Det. Karr reviewed surveillance footage from the business and processed the scene.
>
> The surveillance footage depicted a person dressed in a black hooded sweatshirt, black pants, dark colored boots wearing a full face covering with a skull-type design on the front enter the store brandishing a black handgun with a silver breach in his left hand. It should be noted that the actor was not wearing any type of hand covering or gloves during this incident. During this robbery, the actor goes behind the counter in an employee area and orders the employee to open the cash register. The employee complies and the actor removes money from the cash register. The actor then lifts up the cash drawer with his left hand and throws it on the floor. A total of $449.45 was taken during the course of this robbery.
>
> Upper Darby Detective Karr #52 was able to obtain a latent fingerprint lift from the cash drawer in the area where the actor had lifted the drawer. This fingerprint lift was sent to the Delaware County District Attorney's Office, Criminal Investigative Division. Forensic Science Unit, and Latent Fingerprint Section and analyzed by Detective David McDonald. On Monday June 11, 2018, Det. McDonald informed Upper Darby Police that he had developed Anthony Wright, B/M, [redacted] as a suspect from this print and it was the left middle (#8) finger of Pennsylvania SID: 370-90-83-2 and FBI: no.:956506EDI assigned to Anthony Wright DOB: [redacted].

(Id. at 2–3.) Regarding the second robbery, the affidavit states:

> On Friday 05-18-18 at approximately 7:55 pm, 19th District officers responded to the Walgreens located at 300 N. 63rd Street for a robbery point of gun [sic]. Upon arrival officers met with employees from Walgreens. The cashier told responding officers an unknown black male wearing all black clothing, black mask with skull print, and dark boots entered the store, approached him at the register, and pointed a black gun at him. The male began demanding money from the register. . . . The manager opened the register and the defendant took all of the cash. After taking the money from the register, the defendant asked the manager where the rest of the money was. The manager opened the mini safe under the counter and the defendant took the remaining cash. The defendant fled through the Walgreens parking lot onto the 300 block of north Gross Street. The manager stated between the register and safe, $675 was taken during this incident. . . .
>
> Video surveillance was recovered from the Walgreens which captured the entire incident. After robbing the store the defendant is observed on video running through Walgreens parking lot onto the 300 block of north Gross Street. Additional video was recovered from the 300 block of north Gross Street. The defendant is observed on video running onto Gross Street, pulling his mask off, and walking

3

>towards a green Ford Mustang.  The defendant is then observed on video getting into the Mustang then driving northbound on Gross Street towards Haverford Avenue out of view of the camera.  The assigned reviewed video from 316 N. Gross Street and 331 N. Gross Street. Moments before the robbery a green Ford Mustang is observed driving northbound on the 300 block of north Gross Street.  The vehicle had fading on the roof with and what looks like a parking ticket on the right side of the windshield.  The vehicle did not have inspection stickers. . . . After a few minutes a black male is observed exiting the vehicle wearing all black clothing and dark boots.  This male is observed walking southbound on Gross Street towards Vine Street.  Moments after the robbery, this same defendant is observed running out of the Walgreens parking lot.

(Id. at 2.)  The affidavit further explains how police connected Defendant to the green Ford Mustang in the surveillance video several weeks after the Walgreens robbery:

>On June 8, 2018, Detective Babb observed a green Ford Mustang at 510 N. 63rd Street.  This vehicle matched the suspect vehicle depicted in surveillance video.  The owner of the lot stated that on May 26, 2018, a young male came to his shop and offered to sell him the vehicle for $200 . . . . The owner went on to say that he checked the vehicle and it was not registered to the male.  He stated that the male texted him a photograph of his Pennsylvania license from cellular phone number 267-323-9584.  He stated that the male took his belongings from the trunk and removed the tag from the car and left.  After speaking with the owner of the lot he agreed to sign a consent allowing Detective Babb to remove the vehicle from the lot for investigation . . . Detective Babb located in the vehicle numerous items belonging to, or in the name of, Anthony Wright.  This incident is documented under DC #18-19-040146 and SWDD # 1-5819.

(Id.)  The affidavit also establishes that this telephone number belonged to Defendant and confirms that his address is 6321 Girard Avenue:

>On June 12, 2018 Detective Matthew Rowles #32 determined that Anthony Wright was on Pennsylvania State Parole.  Detective Rowles contacted Wright's parole agent Zane McGowan.  McGowan confirmed the phone number for Wright was 267-323-9584.  McGowan said he called that number on May 20, 2018 and spoke with Wright.  Furthermore, McGowan stated that he visited Wright on May 30, 2018 at 6321 West Girard Avenue, Philadelphia, Pennsylvania, which is Wright's Grandmother's residence.  McGowan stated that he saw Wright at the house and that Wright did have a bedroom at the residence.

(Id. at 2, 4.)  The search warrant affidavit then concludes:

>Based on your affiant's training and experience it is known that evidence is likely to be found in the possession of persons involved in criminal activity.  It is common

for persons involved in criminal activity to hide evidence and contraband related to the criminal activity in their residence to avoid discovery and detection. Based on the facts and circumstances involved in these incidents, along with the time in-between incidents, it is likely that the actor, Anthony Wright is still in possession of the clothing and the firearm used in these crimes.

(Id. at 4.) According to the search warrant, the items to be seized were:

> Weapons, firearms and ammunition, including but not limited to handguns, replica firearms, any record or receipts pertaining to firearms and ammunition. Any firearm accessories to include but not limited to magazines and holsters. Any spent shell casings or other indicia or fired cartridges.
>
> Articles of clothing to include any face coverings with a skull or skeleton type design, black hooded sweatshirt or jacket, black pants, dark colored shoes.
>
> United States Currency
>
> Newport Cigarettes
>
> Wallet or identification belonging to victim P.H.
>
> Wallet or identification belonging to victim G.G.
>
> Wallet or identification belonging to T.M.
>
> iPhone 7 plus belonging to T.M.
>
> Cellular phones or electronic devices belonging to, in the possession of, or in the residence of, Anthony Wright

(Id. at 4.)

On June 14, 2018, one day after the judge signed the search warrant, police executed the search warrant at 6321 Girard Avenue. (See Doc. No. 40 ¶ 6.) The police seized the following items there: a pay stub with "Anthony Wright" printed on the front, a pair of black pants, envelopes addressed to "Anthony Wright," and an Apple iPhone. (See Doc. No. 40-1 at 2.) On June 15, 2018, Defendant was arrested pursuant to an arrest warrant from the Upper Darby Police Department for the Sunoco A-Plus robbery on March 28, 2018. (See Doc. No. 40-2 ¶ 23.) In

5

addition, the Commonwealth of Pennsylvania Board of Probation and Parole issued a Warrant to Commit and Detain Defendant.  (See id.)

### III.     CONCLUSONS OF LAW

Defendant argues that the search warrant and accompanying affidavit violated the Fourth Amendment because the search warrant was not supported by probable cause and, therefore, the items seized at his home should be suppressed from use at trial under the exclusionary rule.  (See Doc. No. 40 ¶¶ 15–22.)  Under this rule, evidence obtained in violation of the Fourth Amendment will not be introduced at trial.  See Davis v. United States, 564 U.S. 229, 232 (2011).  Further, Defendant maintains that the good faith exception to the exclusionary rule does not apply under the facts of this case.  (See id. ¶¶ 35–39.)  On a motion to suppress pursuant to the exclusionary rule, "the burden of proof is on the defendant who seeks to suppress evidence."  United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995) (internal citations omitted).

Taking all relevant facts into consideration under this standard, Defendant has not satisfied his burden of proving that the evidence he wishes to suppress resulted from an unlawful search.  Rather, the search and seizure of physical evidence at Defendant's home was lawful for two reasons.  First, it was reasonable for the judge issuing the search warrant to conclude that probable cause existed to search 6321 Girard Avenue based upon the facts in the search warrant affidavit.  Second, the good faith exception applies to the execution of the search warrant by Philadelphia police.  For these reasons, Defendant's motion to suppress physical evidence will be denied.

### A.  Probable Cause to Search Defendant's Home

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S.

CONST. amend. IV. Under the Fourth Amendment, whether probable cause to search exists is based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230 (1983). "To find probable cause to search, there needs to be a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (quotation marks and citation omitted).

In approving or denying an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The magistrate may draw "reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quotation marks omitted). In turn, the role of a district court is highly deferential, as the court must "simply ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." Id. (citing Jones v. United States, 362 U.S. 257, 271 (1960) (quotation marks omitted)).

While police must have some reason to search the subject location, "direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." United States v. Conley, 4 F.3d 1200, 1207 (3d Cir. 1993) (citing United States v. Jones, 994 F.2d at 1056). Further, "[a] court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Hodge, 246 F.3d 301, 305–06 (3d Cir. 2001) (citing Whitner, 219 F.3d at 296 (citation and internal quotations omitted)).

Here, the search warrant affidavit provided sufficient facts for the magistrate judge to reasonably find probable cause to issue a search warrant for Defendant's home at 6321 Girard Avenue. More specifically, based on the totality of the facts alleged in the search warrant affidavit, the affidavit describes the robberies at issue, explains how they were committed in the same manner and by a person wearing similar clothing, and illustrates how police identified Defendant as a primary suspect in both robberies. (See Doc. No. 40-1 at 2–4.) The affidavit supports these conclusions by referring to fingerprint evidence, surveillance footage, still images, and Defendant's connection to a getaway car used in the second robbery. (See id.) Additionally, the search warrant affidavit confirms that 6321 Girard Avenue is where Defendant resides. (See id. at 4.) Finally, based on the nature of Defendant's alleged robberies, which involved taking items from the targeted retail establishments and victims inside, there was a fair probability that contraband evidence of Defendant's alleged crimes would be in his home. Therefore, it was reasonable for the issuing magistrate to find probable cause to search Defendant's home.

Defendant's main argument to the contrary is that no reasonable connection exists between his home and the robberies that would have established probable cause to search the home. (See Doc. No. 40 ¶¶ 17–22.) However, well-established precedent in the Third Circuit directly contradicts this notion. Regarding one's home, the Third Circuit has held that "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that the person's residence contains evidence of the crime increases." Jones, 994 F.2d at 1056. For physical evidence typical of robberies, the Third Circuit noted that it is particularly probable to find certain types of evidence in the perpetrator's home: cash, clothing, and firearms. See id. at 1056. In Jones, the court explained that "cash is the type of loot that criminals seek to hide in secure places like their homes. . . . Similarly, the other items sought, clothing and firearms, are also the types of

8

evidence likely to be kept in a suspect's residence." Id. Likewise, in United States v. Aikens, the Third Circuit found that affidavits supporting search warrants for a defendant's two residences established probable cause because they "identify [the defendant] as one of the robbers, link him to a gun, stolen merchandise, and clothing," which are "items that could reasonably be expected to be found in the two locations where Aikens lived." 67 F. App'x 100, 102 (3d Cir. 2002).

Both the Sixth and Seventh Circuits follow Third Circuit precedent. The Seventh Circuit has held that "when there is no articulable, non-speculative reason to believe that evidence of a crime could not have been hidden in that individual's home, a magistrate will generally be justified in finding probable cause to search that individual's home." United States v. Aljabari, 626 F.3d 940, 946 (7th Cir. 2010). Further, the Sixth Circuit noted that "it is reasonable to suppose that some criminals store evidence of their crimes in their homes, even though no criminal activity or contraband is observed there." United States v. Williams, 544 F.3d 683, 687 (6th Cir. 2008) (quotation marks omitted). Additionally, the Sixth Circuit has stated in dicta that when a gun is used to commit a crime, this "is sufficient to establish a nexus between the suspected criminal's gun and his residence." Peffer v. Stephens, 880 F.3d 256, 272 (6th Cir. 2018), cert. denied, 139 S. Ct. 108, 202 L. Ed. 2d 30 (2018).

Based upon the magnitude of the facts described in the search warrant affidavit, the issuing judge was justified in drawing a reasonable inference that physical evidence of Defendant's alleged robberies would be found at his home. Defendant's charged crimes, two counts of robbery and two counts of using a firearm in connection with a crime of violence, involve physical evidence that was expected to be found in the perpetrator's home, such as cash, a gun, and clothing. See Jones, 994 F.2d at 1056. These are, in fact, three of the items listed in the search warrant for Defendant's home. (See Doc. No. 40-1 at 4.) Additionally, like in Aikens, the search warrant

9

affidavit here describes how Defendant is linked to the crimes alleged. See 67 F. App'x, at 102. Therefore, based upon the nature and type of offense, there was probable cause to believe that contraband or evidence of the robberies would be found at Defendant's home. See Burton, 288 F.3d 91, 103 (3d Cir. 2002). Thus, under the totality of the circumstances, the judge had a substantial basis for issuing a search warrant for 6321 Girard Avenue due to sufficient probable cause.

### B. The Good Faith Exception Applies

Second, the physical evidence from Defendant's home also is admissible under the good faith exception to the exclusionary rule, as set forth in United States v. Leon. 468 U.S. 897 (1984). In Leon, the Court held that evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate" is admissible under the Fourth Amendment, even if the search warrant is "ultimately found to be unsupported by probable cause." Id. at 900. By itself, "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. at 922 (quotation marks and citation omitted). To determine whether the good faith exception applies, a court must inquire "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." Id. at 922 n. 23; see also Hodge, 246 F.3d at 307. Regarding this test, the Third Circuit has clarified that the good faith exception applies when "an officer executes a search in objectively reasonable reliance on a warrant's authority." Hodge, 246 F.3d at 307. In turn, the good faith exception will not apply in four "narrow situations" in which it would be unreasonable for an officer to rely on a warrant:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

    (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;

    (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

    (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002) (internal quotations and citations omitted).

    Here, looking at the four corners of the search warrant affidavit, it does not fall into any of the above four situations.  First, the affidavit was signed and properly administered by a state court judge, which was plainly visible to the law enforcement officers executing the search of Defendant's home. (See Doc. No. 40-1 at 5.)  Second, Defendant has failed to proffer any evidence that the affidavit was recklessly false or that the judge acted improperly in performing their judicial function.  Third, as detailed above, the search warrant affidavit provides a sufficient basis for the judge to reasonably conclude that probable cause existed.  Certainly, then, the search warrant affidavit was not lacking in indicia of probable cause for the law enforcement officers executing it.  Finally, the search warrant affidavit identifies 6321 Girard Avenue as the place to be searched, confirms that this is Defendant's home, and lists the items sought on the face of the search warrant. Therefore, none of the above four situations are present within the four corners of the search warrant. Accordingly, the good faith exception applies because the Philadelphia police acted with objectively reasonable reliance on the warrant's authority.  See Hodge, 246 F.3d at 307.  Therefore, the items confiscated at Defendant's home pursuant to the search warrant will not be suppressed.

## IV. CONCLUSION

Upon review of the search warrant affidavit (Doc. No. 40-1), the Court finds that the search and seizure of items pursuant to the search warrant issued for 6321 Girard Avenue was lawful under the Fourth Amendment. Accordingly, the Court will deny Defendant's Motion to Suppress the items seized at his residence. An appropriate Order follows.